**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| Nicole Murgolo, individually and on behalf of all others similarly situated, | : | |
| | : | |
| | : | Case No. |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| | : | |
| Target Corporation, | : | **CLASS ACTION COMPLAINT** |
| | : | |
| Defendant. | : | **JURY TRIAL DEMANDED** |
| | : | |
| | : | |
| | : | |

Plaintiff, Nicole Murgolo (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1.     This action seeks to remedy the deceptive and misleading business practices of Target Corporation (hereinafter "Defendant") with respect to the manufacturing, marketing, and sale of Defendant's Up & Up baby wipe product throughout the state of New York and throughout the United States (hereinafter the "Products").

2.     Defendant has improperly, deceptively, and misleadingly labeled and marketed its Products to reasonable consumers, like Plaintiff, by omitting and not disclosing to consumers on its packaging that the Products are contaminated with *burkholderia cepacia* (a.k.a "B. cepacia" or "Bcc") and *burkholderia gladioli* (a.k.a "B. gladioli" or "Bgg") (Bcc and Bgg collectively ("*burkholderia*").

3. As described in further detail below, the Products contain *burkholderia* which could lead to serious  adverse health consequences. Bcc can cause serious respiratory infections as well as fever and fatigue.[1] Bgg is an opportunistic pathogen that can cause pneumonia.[2]

4.     Plaintiff and those similarly situated (hereinafter "Class Members") certainly expect that the baby wipes products they purchase will not contain, or risk containing, any knowingly harmful substances that cause severe disease and even be life threatening.

---

[1] Centers for Disease Control, *Burkholderia cepacian* complex, https://www.cdc.gov/b-cepacia/about/index.html (last visited June 23, 2026).
[2] Rajendraprsad, Sanu, Fatal Case of *Burkholderia gladioli* Pneumonia in a Patient With COVID-19, https://pmc.ncbi.nlm.nih.gov/articles/PMC9753951/ (last visited June 23, 2026).

5.    Unfortunately for consumers, like Plaintiff, the baby wipe Products they purchased contain *burkholderia*.

6.    Defendant is using a marketing and advertising campaign that omits from the packaging that the Products contain, or risk containing, *burkholderia*. Knowing of the presence of *burkholderia* is material to reasonable consumers. The presence of *burkholderia* was solely within the possession of Defendant, and consumers could only obtain such information by conducting by sending the products off to a laboratory for extensive testing. This omission leads a reasonable consumer to believe they are not purchasing a product with a known bacterium such as *burkholderia* when in fact they are purchasing a product contaminated with *burkholderia*.

7.    A representative example of Defendant's lack of disclosure on the Products is depicted below:



3



8. Consumers like the Plaintiff trust manufacturers such as Defendant to sell products that are safe and free from harmful known substances, including *burkholderia*.

9. Plaintiff and other Class Members certainly expect that the products they purchase will not contain, or risk containing, any knowingly harmful substances that cause disease.

10. Unfortunately for consumers, like Plaintiff, the baby Products they purchased contained, or were at risk of containing, *burkholderia*.

11. Defendant's own recall confirmed and demonstrated the potential presence of *burkholderia* in the Plaintiff's product.

**Defendant's Recall is Insufficient**

12. Defendant issued a recall of its Products on June 4, 2026.

13. To be eligible for a refund, a consumer must retain the Products. This recall was deliberately designed to preclude the vast majority of consumers from receiving a recall.

14. Defendant is well aware that any consumer who was made aware of the recall would be predisposed to throwing the Products away. The recall includes products as far back as November 7, 2025—more than six months before the recall was announced. Given the highly consumable nature of the Products, consumers are unlikely to retain the Products for

that period of time. Thus they do not have the Products they purchased in November, December, January, etc.  Therefore, consumers cannot obtain a refund for all Products.

15.    Accordingly, Defendant's recall is designed to reach very few people and designed to benefit very few of the consumers who purchased the Products.

16.    The class action remedy is superior to Defendant's failed recall in every conceivable fashion.

17.    Defendant is using a marketing and advertising campaign that omits from the packaging that the Products contain *burkholderia*.  This omission leads a reasonable consumer to believe they are not purchasing a product that contains *burkholderia* when in fact they are purchasing a product contaminated with *burkholderia*.

18.    Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the packaging and labels themselves.  As such, a reasonable consumer reviewing Defendant's labels reasonably believes that they are purchasing products that are safe for use on an infants' most sensitive areas and do not contain any harmful ingredients.    Indeed, consumers expect the packaging and labels to accurately disclose the presence of such contaminants within the Products.  Thus, reasonable consumers would not think that Defendant is omitting that the Products contain, or are at risk of containing, *burkholderia.*

19.    Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products do contain, or risk containing, *burkholderia*, which is dangerous to one's health and well-being.  Nevertheless, Defendant does not list or mention *burkholderia* anywhere on the Products' packaging or labeling.

20.    Defendant's misrepresentations and omissions of the safety of the Products and what is in the Products was material to Plaintiff and Class Members. Consequently, Plaintiff and

5

Class Members lost the entire benefit of their bargain when what they received was a product contaminated with *burkholderia* that is harmful to consumers' health.

21.     That is because Defendant's Products containing, or at risk of *burkholderia* have no value, or at the very least, Defendant was able to charge significantly more for the Products than they would have had they not omitted the fact that the Products contain—or possibly contain—*burkholderia*.

22.     As set forth below, products, such as Defendant's Products, are in no way safe for human use and are entirely worthless.

23.     Alternatively, Plaintiff and Class Members paid a price premium for the Products based upon Defendant's marketing and advertising campaign including its false and misleading representations and omission on the Products' labels.  Given that Plaintiff and Class Members paid a premium for the Products, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

24.     Accordingly, Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350.

25.     Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## **FACTUAL BACKGROUND**

26.     Defendant manufactures, markets, advertises, and sells products.

27.     Consumers have become increasingly concerned about the effects of ingredients in products that they use.  Companies, such as Defendant, have capitalized on consumers' desire for products, and indeed, consumers are willing to pay, and have paid, a premium for these products.

6

28.    Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as *burkholderia*, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report what the Products contain or are at risk of containing on the Products' packaging or labels.

29.    The Products' packaging does not identify *burkholderia*. Indeed, *burkholderia* is not listed anywhere on the packaging, nor is there any warning about the inclusion (or even potential inclusion) of *burkholderia* in the Products. This leads reasonable consumers to believe the Products do not contain, and are not at risk of containing, *burkholderia*.

30.    However, the Products contain, or are at risk of containing, *burkholderia*.

31.    Defendant is a large and sophisticated corporation that has been in the business of producing, manufacturing, selling, and distributing products for many years, including producing and manufacturing the contaminated Products.

32.    Defendant is in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of its Products and possesses unique and superior knowledge regarding the manufacturing process of the Products, the manufacturing process of the ingredients and raw materials the Products contain, and the risks associated with those processes, such as the risk of *burkholderia* contamination, as well as the ability to test the Products for *burkholderia* contamination prior to releasing the Products into the stream of commerce. Such knowledge is solely within the possession of Defendant.

33.    Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing of its Products. Such knowledge is not readily available to consumers like Plaintiff and Class Members.

34. Defendant has a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the contents of the Products.

35. Therefore, Defendant's false, misleading, and deceptive omissions regarding the Products containing *burkholderia* is likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

36. Defendant's misrepresentations and omissions were material and intentional because people are concerned with what is in the products that they use. Consumers such as Plaintiff and the Class Members are influenced by the marketing and advertising campaign, the Products' labels, and the listed ingredients. Defendant knows that if they had not omitted that the Products contained *burkholderia*, then Plaintiff and the Class would not have purchased the Products, or, at the very least, would not have paid nearly as much for the Products.

37. Consumers rely on marketing and information in making purchasing decisions.

38. By omitting that the Products include *burkholderia* on the labels of the Products throughout the Class Period, Defendant knows that those omissions are material to consumers since they would not purchase a product that contained *burkholderia*.

39. Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

40. Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

8

41.    In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for a product marketed without *burkholderia* over comparable products not so marketed.

42.    As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiff and the Class Members in that they:

    a.    Paid a sum of money for Products that were not what Defendant represented;

    b.    Paid a premium price for Products that were not what Defendant represented;

    c.    Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented; and

    d.    Were denied the benefit of the properties of the Products Defendant promised.

51.    Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased and/or Plaintiff and the Class Members would not have been willing to purchase the Products.

52.    Plaintiff and the Class Members paid for Products that do not contain *burkholderia*. Since the Products do indeed or possibly contain *burkholderia*, the Products Plaintiff and the Class Members received were worth less than the Products for which they paid.

53.    Plaintiff and the Class Members all paid money for the Products; however, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the

Products.  Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

54.     Plaintiff and Class Members saw the Products' packaging prior to purchasing the Products.  Had Plaintiff and Class Members known the truth about the Products, i.e., that they door possibly contain *burkholderia*, they would not have been willing to purchase them at any price, or, at minimum would have paid less for them.

## JURISDICTION AND VENUE

55.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of New York, and Defendant Target  Corporation is a citizen of Minnesota; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

56.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

57.     Venue is proper because a substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

### Plaintiff

58.     Plaintiff is a citizen and resident of Orange County, New York.  During the applicable statute of limitations period, Plaintiff purchased and used Defendant's Products that possibly contained, or had the risk of containing *burkholderia*.

59.     Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff would not have been willing to purchase the Products or pay as much for the Products.  Plaintiff purchased, purchased more of, and/or paid

10

more for, the Products than she would have had she known the truth about the Products. The Products Plaintiff received were worthless because they possibly contained *burkholderia*. Alternatively, Plaintiff paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

60.    Defendant, Target, Corporation is a Minnesota company with its principal place of business in Minnesota.

61.    Defendant manufactures, markets, advertises, and distributes the Products throughout the United States. Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Products.

**CLASS ALLEGATIONS**

62.    Plaintiff brings this matter on behalf of herself and those similarly situated. As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices. Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

63.    The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period.

64.    Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the state of New York at any time during the Class Period (the "New York Subclass").

65.    The Class and New York Subclass are referred to collectively throughout the Complaint as the Class.

11

66.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

67.     Numerosity: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers in the Class and the New York Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

68.     Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.   Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.   Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

c.   Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

d.   Whether Defendant's false and misleading statements and omissions concerning its Products were likely to deceive the public; and

12

e.   Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

69.    Typicality: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

70.    Adequacy: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, her consumer fraud claims are common to all members of the Class, she has a strong interest in vindicating her rights, she has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

71.    Predominance: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

72.    Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.    The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

13

c.      When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.      This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.      Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude their maintenance as a class action;

f.      This class action will assure uniformity of decisions among Class Members;

g.      The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.      Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

i.      It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase its Products.

73.     Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

14

## CLAIMS
## FIRST CAUSE OF ACTION
### Violation of New York GBL § 349
### (On Behalf of Plaintiff and New York Subclass)

74.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

75.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

76.    The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and other New York Subclass Members seek monetary damages against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

77.    Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

78.    Defendant's improper consumer-oriented conduct—including failing to disclose that the Products have, or had the risk of having, *burkholderia* —is misleading in a material way in that it, *inter alia*, induced Plaintiff and other New York Subclass Members to purchase Defendant's Products and to use the Products when they otherwise would not have. Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

79.    Plaintiff and other New York Subclass Members  have been injured inasmuch as they purchased Products that were mislabeled, unhealthy, and entirely worthless.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

80.     Defendant's advertising and Products' packaging and labeling induced Plaintiff and other New York Subclass Members to buy Defendant's Products.

81.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and other New York Subclass Members have been damaged thereby.

82.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and other New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### Violation of New York GBL § 350
### (On Behalf of Plaintiff and the New York Subclass)

83.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

84.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

85.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

16

86.      Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Products inasmuch as it misrepresents that the Products are safe for use and doesn't list that the Products contain *burkholderia*.

87.      Plaintiff and the other New York Subclass Members  have been injured inasmuch as they saw the labeling, packaging, and advertising and purchased Products that were mislabeled, unhealthy, and entirely worthless.  Accordingly, Plaintiff and other New York Subclass Members  received less than what they bargained and paid for.

88.      Defendant's advertising, packaging, and Products' labeling induced Plaintiff and other New York Subclass Members  to buy Defendant's Products.

89.      Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

90.      Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

91.      Defendant made the material misrepresentations described in this Complaint in its advertising and on the Products' packaging and labeling.

92.      Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

93.      As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and other New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages,  interest, and attorneys' fees and costs.

17

## THIRD CAUSE OF ACTION
### Negligence
### (On Behalf of Plaintiff and the Nationwide Class)

94.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

95.    The conduct of Defendant in manufacturing, distributing, and selling the Products with the contamination of *burkholderia* constituted negligence in failing to reasonably act in accordance with all applicable standards of care. Defendant owed Plaintiff and Class members a duty not to disseminate a materially defective product. Defendant breached said duty of care when it nevertheless manufactured, distributed, and sold the Products with the contamination of *burkholderia* to consumers, including Plaintiff.

96.    Defendant also breached its duty of care by negligently failing to timely and/or adequately warn Plaintiff and the Class of the contamination of *burkholderia*, even after Defendant was, or should have been, fully aware of the manufacturing defect in the Products.

97.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members suffered economic injury, entitling them to just compensation, as detailed below.

## FOURTH CAUSE OF ACTION
### Unjust Enrichment
### (On Behalf of Plaintiff and the Nationwide Class)

98.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

99.    Plaintiff pleads this claim in the alternative.

100.    Defendant was unjustly enriched at the expense of Plaintiff and other Class Members in the form of monies that Plaintiff and other Class Members paid for the Products.

101.    Plaintiff and Class Members seek restitution and disgorgement of such inequitably obtained monies.

18

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

(c) Awarding monetary damages and treble damages;

(d) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(e) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(f) Awarding punitive damages;

(g) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and reimbursement of Plaintiff's expenses; and

(h) Granting such other and further relief as the Court may deem just and proper.

*[signatures on following page]*

Respectfully submitted,

Dated: June 24, 2026

**REESE LLP**

*/s/ Charles D. Moore*

Charles D. Moore
121 N. Washington Ave., 2nd Floor
Minneapolis, Minnesota 55401
(212) 643-0500
*cmoore@reesellp.com*

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Tel: (212) 643-0500
*mreese@reesellp.com*

*Counsel for Plaintiff and the Class*